GERARDO BALDRICH, and JOSÉ G. SALGADO, Appellants, v. REGISTRAR OF PROPERTY OF RÍO PIEDRAS, Respondent.

No. 1302. Submitted February 1, 1954.—Decided December 29, 1954.

---

[2] The defendant makes no argument in his brief with reference to the judgment in the aggravated assault case.

*Harry M. Besosa* for appellants.  Registrar appeared by brief. *Rafael R. Fuertes, Guillermo Díaz Díaz* and *Augusto Burgos Mundo* counsel for Planning Board, as *amicus curiae.*

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

According to a certificate of the Registrar of Property of Río Piedras, certain restrictions were imposed by the owners of the urbanization in the ward of Hato Rey known as Reparto Baldrich on the lots composing the said urbanization. These restrictions appear on the margin of the recordation of the lots composing the urbanization while it still

consisted of a single property described as tract No. 1279. These restrictions include provisions for such things as the location on the lots, the height, the type, and value of the residences to be built thereon. The first restriction reads as follows:

"First. Each and every one of the lots composing the said tract of land called 'Reparto Baldrich' will be devoted exclusively to the construction of residences with the exception of Nos. 1, 2, 3, 4, 5 and 6 which make up block A which has been reserved for the commercial area thereof; the construction, however, in the said area of buildings devoted to hospitals, clinics, polyclinics, dispensaries and funeral parlors or any other business of the same or a similar nature is prohibited; and in addition the lots designated as Nos. 201 and 202 in block K, which have been reserved for the construction of a 'Club House'." [1]

The certificate of the Registrar indicates that the said marginal inscription concludes as follows: "Thus result from the deeds as to imposition of restrictive conditions and explanatory acts No. 15, 18 and 39, dated February 20, March 4, and April 16 of this year, executed in Río Piedras, before Notary Emilio Rodríguez, presented at 8:45 a. m. of last March 25, entry 153 Daily 243. San Juan, April 25, 1946."

In 1953 the owners of lots Nos. 201 and 202 filed a document requesting the Registrar to cancel with a marginal note in the recordation of tract No. 1279 ". . . the mention that appears in the said recordation that parcels Nos. 201 and 202 of the aforesaid Reparto Baldrich have been reserved for the construction on them of a 'club house'." This document gives as the reasons for this request the following:
(1) the said mention does not imply a real right of any type, that is, of those specifically enumerated in Article 2 of the Mortgage Law; namely, dominion title, usufruct, use, habitation, emphyteusis, mortgage, rent charge, and servi-

---

[1] We have refrained from translating "Club House" in the Spanish version of this opinion in order not to pass on questions which are not before us. *Alicea* v. *Registrar*, 71 P.R.R. 554.

tude; (2) the reservation mentioned in the said recordation at the most implies a simple prerogative of a personal character; (3) rights which are not real, although they are mentioned in the Registry, do not have any mortgage effect and must be considered as not recorded pursuant to mortgage theory and *Rullán* v. *Registrar*, 67 P.R.R. 658, and *López* v. *Registrar*, 67 P.R.R. 904; (4) in the plans of inscription as to Reparto Baldrich, approved by the Planning Board and recorded in the Registry, lots Nos. 201 and 202 of the said Reparto do not appear as having been dedicated, reserved or designated for construction thereon of a "club house" or building of a specific type.

The Registrar refused this request on two grounds. "First: Because the said cancellation may prejudice rights of other persons who acquired and possess lots in that Urbanization with the knowledge that a Club House would be constructed on the said lots 201 and 202; Second: Because for Registry purposes at least the approval of the Planning Board of Puerto Rico ought to be obtained for this cancellation...". The appellants took this administrative appeal from the ruling of the Registrar. We granted the motion of the Planning Board to appear as *amicus curiae*, and the Board and the Registrar have filed a joint brief.

██ The appellants are correct in their contention that the recordation in the Registry of Property of a purely personal right may be cancelled at the request of the owner of the real property thereby affected. *López* v. *Registrar*, *supra; Rullán* v. *Registrar*, *supra;* Article 28 of Regulations for Execution of Mortgage Law; III Roca Sastre, *Derecho Hipotecario* 352, 361; II *id.*, 213, 190–1, 202; II Castán Tobeñas, *Derecho Civil Español, Común y Foral*, 7. We also agree with the appellants that we cannot take into consideration in this case newspaper advertisements for the sale of lots in Reparto Baldrich—presented by the Board and the Registrar as "Exhibits" to their brief—containing the following

statement: "There has also been reserved sufficient land donated by Reparto Baldrich to its residents, for the construction of a 'country club'." This statement in newspaper advertisements is of course not recorded in the Registry and therefore may not be taken into consideration by the Registrar or by us in this proceeding. II Roca Sastre, *supra*, 19; *Collazo* v. *Registrar*, 55 P.R.R. 432; *Graciani* v. *Registrar of San Germán*, 25 P.R.R. 41; *Infanzón & Rodríguez* v. *Reg. of Guayama*, 24 P.R.R. 130.[2] However, we cannot agree with the appellants that the "reservation" of lots Nos. 201 and 202 for a "club house" is not a real right in favor of the other lots making up Reparto Baldrich.

■■ The appellants argue that the language of the first restriction with reference to lots Nos. 201 and 202 establishes an advantage for the benefit of the owners thereof and not a restriction on the use of the said lots; *i. e.*, that the said lots may be used free of the restrictions on the other lots plus a personal right—or, at the most, a personal obligation —to build a club house thereon. We disagree. We think that as used in the context of the First clause "reserved" means "restricted" and that under the terms of the First clause both the "reserved" commercial area and the "reserved" club house area may be used only for commercial and club house purposes, respectively, for the mutual benefit of all the lots composing Reparto Baldrich. Undoubtedly, some specific owner of one of those lots might regard the provision as to commercial—or even recreational—use as an advantage to him. But the controlling factor for our purposes is that there was recorded in the margin of the recordation of a deed grouping a number of lots into an urbanization known as Reparto Baldrich a series of restrictions on all the lots for their mutual benefit. These restrictions included the "reservation" of cer-

---

[2] For the same reason, we put to one side another statement in the said advertisement reading as follows: "Separate section for commercial zone where a theatre, a grocery store, a pharmacy and other indispensable businesses will be constructed."

tain lots for commercial uses other than those specifically prohibited, and the "reservation" of lots Nos. 201 and 202 for a "club house". The remaining lots were restricted to residential use. From the point of view of the owners of the latter—who might desire commercial and recreational facilities within the urbanization—the restrictions on the lots in block A and on lots Nos. 201 and 202 for commercial and club house purposes, respectively, would be beneficial to their residential lots. It follows that, from their point of view, the restrictions of use both as to the commercial lots and as to lots Nos. 201 and 202 are real rights—with their lots as the dominant tenements and the commercial and club house lots, respectively, as the servient tenements—which are properly recorded in the Registry of Property. See *Santaella* v. *Purón*, 60 P.R.R. 539; *Lawton* v. *Rodríguez*, 35 P.R.R. 445; *Fiol* v. *López de la Rosa*, 46 P.R.R. 724; Article 2, par. 2 of Mortgage Law; Articles 27 and 75 of Regulations for Execution of Mortgage Law; III Roca Sastre, *supra*, p. 353. *Cf. Capella* v. *Carreras*, 48 P.R.R. 811; *Figueroa* v. *Guerra*, 69 P.R.R. 565; 19 Rev. Jur. U.P.R. 47, 52–3.[3]

■ Except for a mortgage right, recordation is only a declaration and not a source of rights. I Roca Sastre, *supra*, pp. 150–1, 153; III—1 Enneccerus, Kipp and Wolff, *Tratado de Derecho Civil*, 210; Judgment of Supreme Court of Spain of February 21, 1947. But we cannot agree with the appellants that the foregoing principle requires us to reverse the ruling herein of the Registrar. On the contrary, as we have seen, the certificate of the Registrar in connection with the marginal recordation on tract No. 1279 recites that the restrictions on the lots composing Reparto Baldrich " . . . result

---

[3] The appellants quote—in support of their argument that the provision for use of lots Nos. 201 and 202 for a club house is an advantage permitting an additional use and not a restriction—from page 7 of Information Bulletin No. 1, issued in August 1945, by the Board to the effect that in a district subject to less restrictions, such as a commercial district, use and construction of residences are permitted. We cannot agree that this has any effect on the private restriction involved herein.

from the deeds as to imposition of restrictive conditions and explanatory acts..." executed and presented for recordation. This is therefore not a case where the Registrar is contending that the Registry is the source of the real right involved herein. Rather the owners of the tract—which became Reparto Baldrich and from which the various lots therein were segregated—created by deed restrictions, which were thereafter recorded, as to the use of lots Nos. 201 and 202 as the servient tenement for the benefit of the remaining lots in Reparto Baldrich as the dominant tenement. . . .

In their brief the Registrar and the Board quote as an alleged additional restriction involved herein the following: "Eleventh: The foregoing restrictions have been imposed as an encumbrance on the above-described property which has been noted in the Registry of Property, in order that with each sale or transfer of rights effected in connection with the lots coming from the urbanization Reparto Baldrich, there will be imposed the obligation of respecting the said restrictions, which are mentioned in the second fact of this deed."

This clause is not included in the certificate of the Registrar. We should therefore ordinarily not consider it here. However, in their reply brief the appellants do not dispute its existence. They argue only (1) that the phrase "the foregoing restrictions" therein refers to lots other than Nos. 201 and 202, which, according to the appellants, are excluded from the restrictions by the terms of the First clause, and (2) that the restrictions "...mentioned in the *second fact* of this deed..." do not and cannot include the provisions of the *First* clause. As to (1), we have already indicated that we disagree and that we read the First clause as imposing restrictions on the use of lots Nos. 201 and 202. As to (2), "...the second fact of this deed..." on its face does not refer to the First clause of the restrictions found recorded on the margin of the recordation of tract No. 1279; rather, it ap-

parently refers to a different document—a deed of which there is no copy in the documents before us in this proceeding and in which, apparently, all the restrictions on the lots composing Reparto Baldrich were mentioned in. the "second fact" of the said deed. Assuming that we may take the Eleventh clause into consideration because both parties refer to it, we believe it supports the position of the Registrar and the Board rather than that of the appellants. In any event, in disposing of this case we rely primarily on the Registrar's certificate as to the restrictions recorded in the margin of tract No. 1279.

█ The appellants rely in part on the fact that in the plan of recordation as to Reparto Baldrich, approved by the Planning Board, as recorded in the Registry, there is no indication that any restriction whatsoever exists on lots Nos. 201 and 202. If the said plan had shown lots Nos. 201 and 202 as ear marked for construction thereon of a club house, the recordation thereof might fortify the position of the Registrar. But the failure to indicate this fact on the general plan approved by the Board does not, standing alone, eliminate the recordation in the margin of the recordation of the deed for tract No. 1279 of the said restriction with reference to lots Nos. 201 and 202.

█ Provisions for mutual uses and restrictions thereon were set up for the lots which were established to compose the urbanization known as Reparto Baldrich. These had the praiseworthy objective of providing a pattern of residential, commercial and recreational areas within the urbanization.[4] Such restrictions, so far as the present rec-

---

[4] Writing in another context, the Supreme Court recently pointed out the importance of planning for an area as a whole. In *Berman and Feldman, Executors* v. *Parker et al.,* 348 U. S. 26, it said at p. 34: "It was important to redesign the whole area so as to eliminate the conditions that cause slums—the overcrowding of dwellings, the lack of parks, the lack of adequate streets and alleys, the *absence of recreational areas,* the lack of light and air, the presence of outmoded street patterns. It was believed that the piecemeal approach, the removal of individual structures that were offensive, would be only a palliative. The entire area needed

ord discloses, were permissible under the law and were properly recordable in the Registry as real rights in favor of the dominant tenements as against the servient tenements. If one of these provisions—that lots Nos. 201 and 202 must be used for a "club house"—is to be modified, that must be accomplished by some method other than an *ex parte* petition filed by the owners of lots Nos. 201 and 202 for cancellation of the recordation in the margin of the original tract as to such use. Whether the appellants may have the restriction as to the use of lots Nos. 201 and 202 cancelled by consent of the owners of the other lots in Reparto Baldrich or by some plenary proceeding is not before us and we make no comment thereon.

The appellants argue that the Registrar erred in giving as his second ground for refusing to record the cancellation herein that "...for Registry purposes at least the approval of the Planning Board of Puerto Rico ought to be obtained for this cancellation...". The only argument made in the brief of the Board and the Registrar in support of the said second ground reads as follows:

"The facts of the case are not sufficient for us to establish with clarity the possible necessity of approval by the Planning Board. We believe, however, that in this case, in spite of the fact that the Planning Board was not a direct party, the elimination of a certain specific use may be of interest to it, from the general point of view, and then it would be a necessary party, as it is in the case of housing projects constructed with Federal funds due to the specific point that there is the necessity to guarantee certain specific uses which the State entrusts to the Board. As to the present proceeding, the Board may be considered as affected insofar as the petitioners themselves have filed a case before it and base their request on the said reserva-

---

redesigning so that a balanced, integrated plan could be developed for the region, including not only new homes but also schools, churches, parks, streets, and shopping centers. In this way it was hoped that the cycle of decay of the area could be controlled and the birth of future slums prevented." (Italics ours.)

tion that these lots have been dedicated for the construction of a Club House. The case in question still has not been decided by the Board and undoubtedly the restrictions must be considered with reference thereto."

We cannot agree with this argument made by the Registrar and the Board. As we have seen, they cite no provision of the Mortgage Law or any other statute which requires approval of the Board if the cancellation requested herein by the appellants were otherwise permissible under the Mortgage Law. For the reasons stated in the text of this opinion preceding footnote 2, we cannot take into consideration in this proceeding the statements in the brief of the Registrar and the Board which are not found in the Registry to the effect that the appellants have filed a case before the Board, which is still pending, for permission to use lots Nos. 201 and 202 as a club house.[5] Moreover, even if the fact that such a case was pending before the Board were properly before us, we know of no statute or regulation which requires the approval of the Board for cancellation of the provision in the Registry as to the use of these lots as a club house. Article 16 of Regulation No. 4 of the Planning Board, adopted on May 1, 1946—and its subsequent repeal—had no effect on the problem before us. See footnote 3 of this opinion.[6] The Registrar therefore erred in giving as a second ground for his refusal to record the cancellation herein that approval of the Planning Board was required before the said cancellation could be recorded.

For the reasons stated, the ruling of the Registrar will be affirmed.

---

[5] The Registrar and the Board state in their brief that on December 31, 1952 the appellants filed a petition before the Planning Board for permission to construct a club on lots Nos. 201 and 202; that the said petition is still pending before the Board; and that the petition recites that these lots ". . . are shown in the Registry of Property as reserved in order to be dedicated to use and construction of a Club House."

[6] Article 16, while it was in effect, read as follows: "When the provisions of this Regulation are in conflict with clauses or restrictions of private agreements or contracts in connection with phases of zoning, the most restrictive will govern."